UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA        :

   -against-                     :

MICHAEL RUTLEDGE,          :            23-CR-269 (FB)

      Defendant.        :
----------------------------------------------------------X

# MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS

Michael Weil
Attorney for Michael Rutledge
Federal Defenders of New York
One Pierrepont Plaza
16th Floor
Brooklyn, NY 11201
michael_weil@fd.org
 (718) 407-7413

Preliminary Statement

Michael Rutledge moves to suppress evidence recovered pursuant to three search warrants.

Mr. Rutledge is charged with Hobbs Act Robbery, Hobbs Act Robbery Conspiracy, and violating 18 U.S.C. § 924(c) in connection with the robbery of a store on February 10, 2023, in Brooklyn. The government's theory of the case, as detailed in the warrants, the Complaint and detention memo, is that Mr. Rutledge was the driver of the getaway vehicle which was parked roughly a block from the robbery during the incident. The government alleges the robbers exited the vehicle immediately before, and returned to the vehicle immediately after, the robbery. Mr. Rutledge allegedly waited by the car.

The government obtained a series of warrants, first on March 14, 2023, for cell site location information ("CSLI") related to a phone it had linked to Mr. Rutledge (Ex. A), and then, on June 9, 2023, for Mr. Rutledge's girlfriend's apartment (Ex. B), as well as his cell phone itself (Ex. C.). The latter warrants relied on the CSLI retrieved in the first warrant, including data showing Mr. Rutledge's phone near the location of the robbery and the home of an alleged co-conspirator before and after the robbery.

The warrants were defective for several reasons. First, the initial warrant for CSLI was issued without probable cause as there was no indication Mr. Rutledge had used a cell phone in connection with the charged crime. Instead, the basis for the warrant was the truism that CSLI would reveal information about the defendant's and his accomplices' whereabouts in contravention of the Fourth Amendment and the Second Circuit's admonition that Court's should exercise "caution" in issuing CSLI warrants due to their intrusiveness. *United States v. Lauria*, 70 F.4th 106, 128-29 (2d Cir. 2023). Pursuant to the warrant, the government obtained the CSLI for not only Mr. Rutledge but someone else the government apparently now believes to be totally

2

innocent.  Given the absence of any allegations linking the phone to the crime in the warrant application the issuing magistrate appears to have acted as little more than a "rubber stamp" for the conclusions drawn by police.  *See United States v. Travisano,* 724 F.2d 341, 345 (2d Cir. 1983).

The subsequent warrants for the home of Mr. Rutledge's girlfriend and his cell phone were defective for relying on CSLI recovered from the first, improperly issued warrant. Moreover, there was no basis to believe evidence would be found several months after the incident in the home of Mr. Rutledge's romantic partner, a residence where the affiant effectively acknowledged he did not live.

The "good faith" exception to the exclusionary rule cannot save the use of evidence recovered in this case.  The warrants were so deficient that a reasonable police officer could not rely upon them.

A. **The Initial Warrant did not Establish Probable Cause to Obtain CSLI**.

Following the robbery of a store in Brooklyn on February 10, 2023, the government sought a warrant for CSLI for telephones associated with Michael Rutledge and Lamont Sullivan, who it apparently no longer believes was involved in the robbery. The warrant application alleged Mr. Rutledge was involved in the robbery based on the following facts, in sum and substance:

- Michael Rutledge drove a red Chevy Malibu with the license plate KYM2656 earlier that evening.  (Ex. A ¶¶ 15-16.)

- The same car was seen driving down a street near the robbery in Brooklyn "shortly" before the robbery took place.  (Ex. A ¶ 13).  The word "shortly" is nowhere defined.

- The robbers entered and exited a red sedan (the "Getaway Car") immediately before and after the robbery.

-  Someone with Michael Rutledge's build, wearing clothing similar to what Michael Rutledge was seen wearing earlier that evening, appeared to be the driver of the Getaway Car.  (Ex. A. ¶ 17.)

- Michael Rutledge was seen associated with the red Chevy Malibu with license plate KYM2656, in the days subsequent to the robbery.  (Ex. A ¶ 18).

- Michael Rutledge can be seen wearing clothing similar to that of the driver of the Getaway Car in days after the robbery.   (Ex. A ¶ 19.)

The warrant application nowhere stated that any participant was seen using a cell phone during the robbery and included no evidence that Mr. Sullivan was involved.  The sole purported basis to believe any phone, or Mr. Sullivan, might have been involved was the fact that Mr. Rutledge had a number of contacts with Mr. Sullivan on the date of the robbery, but none during it, and that he had no calls with him in the weeks before and after.  (Ex. A. ¶ 26.).  The warrant application provided no basis to conclude these calls were suspicious or indicative of criminal conduct, and nothing to explain why the absence of calls on other dates might make these calls somehow more suspect.

The only other fact suggesting Mr. Sullivan might have been involved was the claim that he matched – in height and build only – one of the robbers.  According to the government, the affiant reviewed five hours of Mr. Rutledge's toll records and Mr. Sullivan was "the only individual who law enforcement has identified in these numbers who appears physically similar in size to one of the perpetrators who entered the Store." (Ex. A., ¶ 32.)   The government

4

nowhere indicated how many other people included in the toll records it was able to identify at all, making this fact of dubious significance.

The warrant completely failed to establish probable cause to believe that evidence would be found in CSLI. There was no indication that Mr. Rutledge used a phone to communicate with co-conspirators, and only rank speculation that Mr. Sullivan was a co-conspirator based on nothing more than a flurry of calls and the barest of similarity in height and build to one of the robbers. Instead, the magistrate in this case acted as nothing more than a "rubber stamp" in issuing the warrant contrary to the Supreme Court's admonition that in issuing a warrant, the judge's "action cannot be a mere ratification of the bare conclusions of others." *Illinios v. Gates*, 462 U.S. 213, 239 (1983).

The evidence suggesting Mr. Sullivan might have been involved in the robbery – according to the government -- was that he had 11 calls with Mr. Rutledge from 6:23 p.m. to 7:56 p.m. during the day of the robbery (and several hours before it) but no other contact that day or between January 1, 2023, and February 16, 2023. (Ex. A ¶ 26.) A flurry of calls, without more, is not even remotely indicative of criminal conduct, and the government – now having retrieved his CSLI – presumably agrees. One might have a flurry of calls, but no regular contact, with a plumber over a broken pipe, a relative over a health scare, or a babysitter about a toddler who wasn't feeling well. The warrant provided no information about Mr. Sullivan or these calls to support the inference that they concerned criminal conduct. That his height and build – not his age, face, hair color or race – might have been similar to one of the robbers is obviously meaningless. Height and build are typically viewed as not distinctive. *See e.g. Raheem v. Kelly*, 257 F.3d 122, 138 (2d Cir. 2001). Indeed, even the generic height and build description – short and of average build – proved elastic; in the CSLI warrant the government said Mr. Sullivan was

a match at somewhere between five-feet-three-inches and five-feet-six-inches, but in a subsequent warrant application the government said that Mr. Rutledge's co-defendant Angel Gomez, at five-feet-seven-inches, was similar in height and build to the same robber. (Compare Ex. A at ¶ 27, Ex. B probable cause statement at ¶ 33.)  People who are as much as four inches apart in height are rarely described as similar in height.  The description was so broad and inclusive that it was meaningless.

The affidavit went to such lengths to portray meaningless facts as suspicious that it actually included as supportive of probable cause the fact that Sullivan's toll records reflected no calls during the robbery itself, which, the affiant said, was consistent with the fact that the surveillance footage of the robbery did not show the perpetrator suspected to be Sullivan making any calls.  (Ex. A, ¶ 28.)  But the robbers were in the store for just over a minute, after 11 p.m..  The vast majority of people in New York City likely had no calls during that same minute.  That this sort of factual allegation wound up in the application underscores the extent to which probable cause was lacking, and the fact that the magistrate judge did not fulfill her function to act as a check on law enforcement.

The point is not simply that the affiant turned out to be wrong about the significance of the calls between Mr. Rutledge and Mr. Sullivan; the police may have probable cause but nonetheless be mistaken.  Here, however, the suggestion that the calls constituted evidence of criminality was so specious that it was entirely predictable the CSLI would produce no evidence as to Mr. Sullivan.

The baselessness of the search as to Mr. Sullivan means that the search of Mr. Rutledge's CSLI was unjustified as well because the calls with Sullivan were the sole predicate for believing Mr. Rutledge's CSLI would produce relevant evidence.  Nothing else in the warrant application

provided an indication Mr. Rutledge used his telephone in connection with the crime.  Even if the warrant provided probable cause to believe Mr. Rutledge was involved in the robbery, probable cause to search requires something more; arrest warrants and search warrants are different.  *See Zurcher v. Stanford Daily,* 436 U.S. 547, 555–56, 98 S.Ct. 1970, 1976–77, 56 L.Ed.2d 525 (1978) (stating that the "critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought"); *see also, e.g., Murray v. Griffin*, 2017 WL 2817044, at*6 (E.D.N.Y. 2017) (BMC) (noting that inquiries regarding probable cause to arrest and probable cause to search are similar but have different focuses); *United States v. Rios,* 881 F.Supp. 772, 774 (D.Conn.1995) (probable cause to arrest does not establish probable cause to search home); *United States v. Gomez,* 652 F.Supp. 461, 462 (E.D.N.Y.1987) (same); *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982) ("[T]he fact that there is probable cause to believe that a person has committed a crime does not automatically give the police probable cause to search his house for evidence of that crime. If that were so, there would be no reason to distinguish search warrants from arrest warrants[.]") (internal quotation marks and citation omitted).

The warrant application provided no facts concerning the use of a phone during the robbery, but instead attached false importance to the flurry of calls between Sullivan and Rutledge, which, as noted above, signified nothing.  People speak a lot in rapid succession in all sorts of contexts.

The warrant application was certainly correct in asserting that obtaining CSLI would likely assist law enforcement (Ex. A. ¶ 33), but this is always so.  CSLI will invariably reveal information about a person's movements and associates.  In urging lower courts to use "caution"

7

in "assessing probable cause" in the context of search warrant applications for cell site data, the Second Circuit has noted that such records "can reveal not only nearly the whole of an individual's movements but also, in the process, much about his personal and professional life." *United States v. Lauria*, 70 F.4th 106, 128-29 (2d Cir. 2023) (citing *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018) (noting that cell site data "provides an all-encompassing record of the [cell phone user's] whereabouts ... revealing not only his particular movements, but through them his familial, political, professional, religious, and sexual associations")) (internal citations omitted). Surely, *Carpenter* and *Lauria* mean that the Fourth Amendment does not authorize the government to obtain CSLI whenever a suspect is alleged to have been part of some sort of concerted criminal activity.

Courts in this circuit have suppressed evidence recovered pursuant to warrants obtained for CSLI and cell phones on similarly weak factual bases. *See United States v. Bertini*, No. 23 CR. 61 (PGG), 2023 WL 8258334, at *10 (S.D.N.Y. Nov. 29, 2023) ("there are no factual allegations suggesting that Bertini ever used or carried his cell phone in connection with, or to facilitate [the charged crime of] bank burglary. The required nexus between the material to be searched – cell site data for Bertini's cell phone – and the bank burglaries is not factually supported in Agent Harper's affidavit.") This case is similar to *Bertini*. There was no evidence of anyone's use of a phone in connection with a crime, just unjustified speculation about Mr. Rutledge's frequent contact with Mr. Sullivan. And while the defendant in *Bertini* appears to have acted alone, courts have rejected the notion that any sort of concerted criminal activity will necessarily justify a cell phone search. *United States v. Garcia*, No. 3:20-CR-00058 (KAD), 2023 WL 4850553, at *8 (D. Conn. July 28, 2023) (ordering suppression because mere allegation of coordination and communication among co-conspirators "provides little probability

that *information relating to the crime* would be contained on *Garcia's* phone … [and] … does not raise a fair probability that they communicated their plans via *cell phones.* Indeed, to issue a warrant on the basis of evidence suggesting minimal amounts of coordination between co-conspirators would be to license virtually automatic searches of the cell phones of any persons suspected of engaging in criminal conspiracies.") (internal quotations omitted).  Upholding the warrant here would, effectively, authorize a search for CSLI in every case involving co-defendants or a conspiracy charge.  The Fourth Amendment requires more.

Accordingly, the initial warrant was unlawfully issued.  As the Court found in both *Bertini* and *Garcia,* because a reasonable police officer could not have relied on the warrant in good faith, the evidence must be suppressed.  The Court's discussion rejecting application of the good faith exception in *Bertini* is directly on point:

> The search warrant affidavit is [] devoid of factual allegations suggesting that Bertini had carried or used his cell phone in connection with or to facilitate either bank burglary. …
>
> Reliance on the search warrant affidavit here likewise cannot be attributed to a lack of clarity in the law. The Government has not cited any case suggesting that a warrant for cell site data can be premised solely on an agent's observation that most people carry cell phones most of the time. To the contrary, cases cited by the Government involve a suspect's actual use of a cell phone in connection with a crime and/or the presence of the cell phone at the scene of the crime. Agent Harper is "charged with reasonable knowledge of what the law prohibits," United States v. Wey, 256 F. Supp. 3d 355, 408-09 (S.D.N.Y. 2017), and should have known that a search warrant affidavit must include particularized, non-conclusory factual allegations demonstrating a nexus between a suspect's alleged criminal conduct and the materials to be searched.

*Bertini,,* 2023 WL 8258334, at *12.  The Court went on to reject the application of the good faith exception because "the affidavit contained 'glaring deficienc[ies] that any reasonable police officer would have known was constitutionally fatal.'"  Id. (quoting *Groh v. Ramirez*, 540 U.S. 551, 564 (2004).    The same is true here.

9

2.  **There was no Probable Cause to Search the Defendant's Girlfriend's Home**.

The application for a warrant to search the defendant's girlfriend's home (Ex. B) and seize among other things any cell phone obtained there linked to Mr. Rutledge, did not establish probable cause to believe evidence would be recovered.  Accordingly, all evidence recovered from this warrant must be suppressed.

First, as an overnight guest at the residence, indeed a regular guest according to the government, Mr. Rutledge had an expectation of privacy in the premises. *Minnesota v. Olson*, 495 U.S. 91, 97 (1990); *United States v. Ray*, 541 F. Supp. 3d 355, 380 (S.D.N.Y. 2021).

The fact that Mr. Rutledge sometimes stayed at the premises, however, obviously did not provide probable cause to believe evidence would be found there.  The warrant was sought and obtained on June 9, 2023, four months after the robbery.  Thus as an initial matter, the information in it was stale.  The application also cited no specific evidence linking the home to the robbery other than that Mr. Rutledge's girlfriend lived there, and that he frequently stayed there.  The warrant failed to establish that he went to the premises after the robbery, only that he was in the "vicinity."  (Ex. B., ¶ 8.)  The only evidence of him actually being inside the home was a 911 call made from the residence almost two months after the robbery.  (Ex. B ¶¶ 8-10.)

The affiant also provided his "expert" opinion in support of the proposition that evidence would be recovered from the home, but the statements were so non-specific that they could not support a search.  The affiant stated:

> Based on my training and experience, and my participation in this investigation, I am aware that individuals commonly keep their clothing in their homes.  I am further aware that individuals who commit robberies often keep robbery proceeds, such as stolen cash, and/or weapons in their homes.  Consistent with this, there is evidence that MICHAEL RUTLEDGE and ANGEL GOMEZ returned to SUBJECT PREMISES-1 and SUBJECT PREMISES-2, respectively, following the armed robbery and that the clothes that they were wearing, the cash proceeds from the armed robbery, and the firearm returned to SUBJECT

REMISES-1 and/or SUBJECT PREMISES-2 without having been discarded or hidden elsewhere.

(Ex. B, ¶ 16). Of course, if the fact that people keep clothes in their homes sufficed to provide probable cause to search, there really would be no distinction between a search and an arrest warrant. Moreover, given the four-month lapse of time between the robbery and the warrant, there was no basis for the affiant to conclude that the clothes, proceeds of the robbery and/or a firearm would still be present even if it was reasonable to believe they once were. Probable cause must exist at the time of the search. *United States v. Raymonda*, 780 F.3d 105, 114 (2d Cir. 2015). This was not case where an ongoing criminal conspiracy was alleged, such that, there was reason to believe there would be evidence recovered four months after the alleged incident. *See Id*.

The application suffered from an even more fundamental defect. Even if the Court accepted the above conclusory assertion as sufficient, the affiant only opined that criminals keep clothing, proceeds and firearms in *their own homes*. But the warrant did not seek authorization to search Michael Rutledge's home. It sought authorization to search *someone else's house*. If. as detailed above, probable cause to believe someone committed a crime cannot alone establish probably cause to search that person's home, it follows inexorably that it cannot establish probable cause to search *someone else's home*. Even if Mr. Rutledge "appears to spend the night frequently" at the premises as alleged in the affidavit, the affiant never alleged that people keep evidence of crimes at their girlfriend's houses or provided a factual basis for the Court to so conclude. (Ex. B, ¶ 9.) It was an enormous and unjustified leap in logic for the magistrate judge to authorize a search of a girlfriend's house based on a law enforcement officer's opinion that criminals keep evidence in their *own* homes.

11

Indeed, since the affidavit did not even purport to establish probable cause evidence would be found in a girlfriend's home, a reasonable police officer could not in good faith rely on it. *See e.g. United States v. Moran*, 349 F. Supp. 2d 425, 477 (N.D.N.Y. 2005) (rejecting application of good-faith exception where warrant established no factual connection between the criminal activity and the residence). The reasoning of *Moran* applies here.

Finally, because the warrant relied on information obtained from the earlier, invalid warrant for CSLI, evidence recovered pursuant to it should be suppressed. Where the probable cause allegations in a warrant are themselves based on illegally seized evidence, evidence recovered pursuant to the warrant is inadmissible as fruit of the poisonous tree. *See United States v. Reilly*, 76 F.3d 1271, 1282 (2d Cir. 1996). The good-faith exception for searches undertaken pursuant to warrants does not apply where the warrant is obtained in bad faith based on illegally seized evidence. *Id*. at 1283.

3. **The Warrant to Seize and Search Mr. Rutledge's Cell Phone was Invalid**.

Along with the warrant to search Mr. Rutledge's girlfriend's home the government sought and obtained a separate warrant to search and seize his cell phone. (Ex. C.) The seizure of the cell phone was, as an initial matter, the fruit of the invalid entry to his girlfriend's home and thus evidence recovered from the cell phone must be suppressed under the fruit of the poisonous tree doctrine if the Court finds the premises warrant wrongly issued. Also, as the probable cause allegations contained in the attachment to the warrant depended heavily on the improperly granted CSLI warrant, evidence recovered pursuant to it must suppressed under *Reilly. Reilly*, 76 F.3d at 1282. As discussed above, prior to obtaining the CSLI information the government lacked any basis to connect Mr. Rutledge's phone to the criminal conduct.

## **CONCLUSION**

For the foregoing reasons the evidence should be suppressed.

.

Brooklyn, New York
February 2, 2024

_____/s/_____
Michael D. Weil
Federal Defenders of New York
Attorneys for Michael Rutledge
One Pierrepont Plaza
Brooklyn, New York 11201
(718) 407-7413